Some students here from Widener University School of Law, is that correct? Is there anybody? I think it was yesterday. There, yeah. It was on today, too. Oh, okay. Welcome. Glad to have you. And as I've done the last two days, I really do appreciate, I think we all appreciate the panel. Chief Judge Sleet allowing us to use his chambers for the purpose of today's oral arguments. We have three matters this morning, and the first is number 13-2815, Mocco et al. v. Frumento et al., Mr. Scarpone, Mr. LoSallo, and Mr. O'Donnell. Is that correct? Yes, Your Honor. Whenever you're ready. Good morning, Your Honors. I'd like to start by... But give your name for the record and how much time you wish to reserve for rebuttal. I want to reserve five minutes for rebuttal, and my name is James Scarpone. I represent the Mocco parties, the appellants here. Thank you. Granted. I wanted to start, Your Honor, by revisiting our response to the court's inquiry about a month ago, or less than a month ago, concerning the status of the state court litigation. The case is, again, scheduled for trial right now. The date is April 21st, but that does not appear to be a real date, simply because of an errant bankruptcy filing, a recent one, which I described in my letter response to the court. Since my letter of response, I've been down here in Wilmington, but across the street in the bankruptcy court, and Judge Sanchi has entered an order transferring the CB3 case that I referred to, plus the two other bankruptcy filings, transferring them to Judge Schiff in Connecticut. Okay. Judge Schiff's still around, huh? Hmm? Judge Schiff is still around. He's still there, Judge. I appeared before Judge Schiff way back when. The problem we have with the trial date is that CB3 is asserting the automatic stay, claiming that the trial in New Jersey will affect its property rights. It's a rather inflammatory situation up in Connecticut because of what happened on the 26th of February when CB3 came into court and told Judge Schiff that he shouldn't approve our settlement with the trustees, but he should take their $12 million offer to buy the trustees' position, and then the next day they filed down here. So that had to be cleaned up. The bottom line is we've been prevented from going forward again with the trial in New Jersey. That's where we come in here. You want to add two parties, and the court has said no because it perceived that there was a violation of the entire controversy doctrine. The district court dismissed our case. Now, the way it started... Dismissed your case or refused to grant, or precluded the claims from being made against Mr. Fermento and the insurance company. The district court dismissed our case with prejudice. What had happened was in June of 2000... What do you mean? The whole case? The whole case. Our case against these two defendants. Our other case, the case that has been pending for so long, is pending in the state court, not the federal court. We had originally filed this case in the state court, but the defendants removed it to the federal court. And what are you alleging different in this case than you alleged in the currently pending state court action? We are alleging that in the course of discovery, in the course of reading through thousands of emails, we found evidence of these two defendants, and not Chicago Title itself, but its agents, their involvement in the same conspiracy on which we were already suing. And when did they give you the documents that contained the evidence that showed you that there was some involvement of these two, this person and this entity? Well, the documents were given to us during the year 2010 and continuing after that. It wasn't like, it wasn't a single document production. There were three document productions by Chicago Title. Let's go to this one. But there were other documents. When were you given the documents that showed the involvement of Chicago Title and Mr. Frumenta? It's hard to pin down a date. I would have to say we had the bulk of them, not all of them, but at least we had the ones from Chicago Title and from their agent, Horizon Title, which no longer existed. I'd have to say we had them by the summer of 2010. Now, reading them was another matter. We're not talking about a box of documents. We're talking about literally a room full of documents. Many boxes, thousands and thousands of documents. And frankly, they were all produced without a staple or a paperclip. So it was difficult to sort through and figure out what was attached to what. But that process took us a long time, maybe longer than it should have, but that's not a relevant consideration under the entire controversy rule as the New Jersey Supreme Court defines it. You had them, I guess, at the latest by the summer of 2010. When did you attempt to bring them into this action? When I say we had them, I mean we had the Chicago Title documents and the documents of their agent, which Chicago Title had taken possession of. We were also getting documents from other defendants. We had a very substantial production of Koskala documents and documents from a law firm in Connecticut. Well, we'll accept that you had a big job, but can you respond to the question about when you took any action on the documents that you had? I moved for leave to amend in June of 2011. So roughly a year later. Approximately a year later. And at any time, have you ever amended your Rule 4.5.1b2 disclosure? No, I followed a different procedure. I moved for leave to amend it. Instead of just filing the Rule 4.5, 4,5-1 certification that there was a potential other party, we filed a proposed amended complaint identifying the parties and the claims we intended to assert. Doesn't that defeat the purpose of the Rule? You say you followed a different procedure, but the purpose of the Rule is to give notice before there's an effort to amend, isn't it? No, Judge. The purpose of the Rule is to allow the trial judge to control the scope of the litigation. Well, sure. If all they cared about was motions to amend, there's no purpose at all to the Rule, is there? You couldn't have amended without moving, and the court would always have the opportunity to do that. The Rule is supposed to do something more than that, isn't it? Yes, but not in the way I think Your Honor is hinting at. What the Rule is intended to do is to prevent the cagey litigation tactic of withholding a claim, not disclosing it, take your best shot with one group of defendants, see how that works out, and then take a different shot in a different case against other defendants. Ultimately, I'm sure that is a purpose, but I'm struggling a little bit with the argument you made in your papers and here that a motion to amend is good enough. If a motion to amend were good enough, what is the purpose of the Rule? Why bother? It seems to serve something more than merely putting the court and those parties on notice via the motion. Judge, the Supreme Court of New Jersey has in fact said that a motion to amend does serve that purpose. Do you have some authority that says you don't have to obey 4.5? It doesn't say it that way, Judge. It's a notice Rule, and it says what is required is notice. Well, you're looking for that. I don't want to waste time looking for it. I believe it's in the Kent motor car case. It's either in there or at 700 Highway 33. 700 Highway 33 is an appellate division case, but historically, before we had Rule 4.5-1 with the subdivision requiring this certification, historically it was done by motion for leave to amend. The point was the goal was to get notice. Isn't that right against you, Mr. Scarpa? I mean, if that's the way it was historically done and then they instituted the Rule, it's because they wanted something different happening. They wanted this extra step. Otherwise, why bother enacting the Rule? I believe they wanted to prevent a practice that they saw in some kinds of cases. They didn't want an extra procedural step. They wanted to prevent something, and they wanted to prevent it through a notice mechanism. In the Kent motor car case, which is the case in New Jersey on the modern version of the Rule, and oddly enough, a case never cited by the district court judge in this case. I have a copy of it. Judge Justice Holmes, in her opinion there, outlines the history of this problematic Rule that we have in New Jersey. We have submitted four unpublished opinions that have come down since the first brief was filed in this case. In each of those four, I'm sorry, three, plus there's one more that I got. Frankly, I read it yesterday morning. It came out Monday of this week. In all four cases, the New Jersey Appellate Division is reversing a trial of judges granting of a dismissal order based upon the entire controversy Rule in a case which involved party joinder, not claim joinder. It seems that trial judges are having difficulty with this Rule. It is not intended to be a door slamming mechanism. That could well be the case, but even if one were to say there was an error here and the court applied claim instead of party joinder, ECD doesn't, well, did you comply with any timeliness requirements associated? Is there a timeliness requirement associated with what would apply? There is no specific deadline set for the filing of the certification. It is described as an ongoing obligation. And the proof of the pudding is in the application of the entire controversy Rule starts out with the first issue being whether this is in fact a successive action or whether it's a pending action. It's an attempt to eliminate piecemeal litigation. Yes. I'll tell you what, why don't we hear from Ministers Lozala and O'Donnell and then we'll get you back on rebuttal because you do have five minutes so we'll probably go beyond that anyway. Judge, there is one other thing I wanted to mention and I think in fairness to them I should mention it first. Go ahead. And that is in preparing for today I went back and looked at the removal Rule. I was prompted to do that by your honor's May 19th letter asking about the status of the state court litigation. Right. I checked the language and realized that I had missed something and that is that the Rule, the removal Rule, speaks in terms of 30 days from the date the defendant receives a copy of the pleading. Well, it's a little late to do something about that now, isn't it? So why don't we just stick to what we're here to decide today? Well, I mean, I'm sorry. What you have to say relates to what? Relates to the fact that the removal was out of time. Okay. Are you suggesting there's no jurisdiction? Yes, Judge. It is a little late to be raising that, but if you've got an argument on that, we're going to have to have something more than your say-so at the podium, I think. Your Honor. We'll deal with that on the bottom then. We can ask them. Go ahead, Mr. LaSalle. I'm Mr. O'Donnell. Oh, Mr. O'Donnell. I'm sorry. I represent Chicago Title. Okay. May it please the Court, I'm Michael O'Donnell. I represent Chicago Title Insurance Company. And I'd like to You may want to back that last thing out, but deal with that as well. Is it a suggestion that the removal was late? I am not aware of that, but I am aware, and I believe the law is pretty clear in this circuit, that if you have a procedural defect like that, if it's not raised, it's waived. It may be. What we may do is when we get done in the end, we'll deal with that in a minute or so, because that's not for today's purposes, and we may deal with it via some type of supplemental memorandum. I would like to outline six facts to the Court. I think that will answer the Court's question as to when Mr. Mocker knew he had a claim and how it was planned. First, the first claim against Chicago Title was filed in March 2007, where it aims to defend it in a quiet title action. Two years pass. January 9, 2009, we are named as defendants. In that complaint, there is no doubt that Mr. Mocker alleged all the claims that bring us here today while he did not ask for relief, per se, from Chicago Title. I say that by referring to the record. And if we look at paragraphs 103, 114 through 116, and 129 of Mr. Mocker's Second Amendment complaint filed in the State Court action, at the appendix 201 through 205, you will see that in the factual assertions, Mr. Mocker pleads that Horizon Title, my agent, was sought out in conspiracy with all of these defendants. If that's true, let's accept for the sake of discussion that that's true, Mr. O'Donnell. The New Jersey rules were changed in 1998, correct? The change to make a distinction that had not previously existed between Party Joinder ECD and Claim Joinder ECD. That's correct, Your Honor. And is it not the case that the District Court here approached this as if this were a Claims Joinder ECD question? Yes, and with regard to Chicago Title, that's absolutely correct, Your Honor, because at the time this complaint was served, I was a party. I was a defendant. Everything that would give a genesis to these claims that are bringing us here today is in that complaint. Which complaint? The State complaint? The Second Amendment complaint, filed on January 9, 2009. In the State? In the State Court. And after we argued that the one actual cause of action pled by Mr. Bacow and briefed on a motion to dismiss, Mr. Scarpone agreed to dismiss that complaint and we had to accept service of discovery. And we did that. But that doesn't change the fact, Your Honor. Well, hold on. You ceased to be a party that dropped, is that right? Yes. And where were you dropped? And we were dismissed as a party, I believe it's May 2009 we were dismissed as a party. Would you acknowledge that the effect of the 1998 amendments is to change the rules so that party joinder ECD becomes a matter of discretion? That is, that the district court's determination of whether to dismiss is discretionary when you're talking about party joinder ECD as opposed to mandatory when you're talking about claims joinder ECD? With regard to party joinder, the district court has to do an analysis of whether it's a successive action, whether the delay is unreasonable, whether it's substantial. Well, whether the delay is inexcusable. And the committee has suggested egregious. I mean, it has to be really bad before you dismiss, right? And, Your Honor, I would submit this case is a carbon copy of that situation. Okay. You're arguing it is really bad, but the point is the district courts or the trial court, whether it's in state or district court on diversity, is supposed to do a discretionary analysis, correct? It's not a you must dismiss. With regard to party joinder, but Chicago title is different because it was a party in the state court action. It was a party twice alleging the same transaction. That's not the question. In what way was the worst thing is your activity is so inexcusable you're going to be dismissed. There's a lot of things leading up to that. Why do we have to, in effect, have the final penalty? Because the rule reads you can be sanctioned including dismissal. Why is this so bad that we have to have their claims adding additional parties, which would seem to be not a whole lot of a problem? And the reason for a notice, by the way, disclosure, is so you know that something might happen you already know. Let me address that, Your Honor. In the May complaint, not May, I'm sorry, the January 2009 complaint, all the facts against Horizon Title are outlined, and that's at Appendix 201 through 205, and you can compare that to the federal complaint, which is an appendix. My question is how is the actions they took inexcusable? What happened was discovery was conducted on Chicago Title, and documents were produced on February 22, 2010, April 8, 2010, June 21, 2010. That's at the appendix 691. Then depositions of Chicago Title's individual agents, David Cohn, Horizon Title, he was deposed on April 12, 2010. Chicago Title's employee, Mr. Naruki, was deposed on April 9, 2010. And the last individual, an attorney, Peter DeYoung, which Mr. Scarpone cites in his complaint at paragraph 103, was deposed on May 12 and May 20, 2010. That's the reason why Judge Vickness said you had everything. What happens next? Is there a prejudice component? Do you have to show that the delay resulted in some prejudice to your case? Yes, there is a prejudice component in that this litigation has ranged on for years, active litigation. Part of the claims against me are not just the properties on which I issue the policy. Mr. Mock was trying to hold me liable for a wild deed scam on three different properties which are under the policy. When you say against you, I thought the claims were against Fremento and Chicago Title. You were writing the policy for Chicago Title? No, Your Honor. Chicago Title. Okay. But part of the claim is those properties I've issued. And even in that state court action, Mr. Mock wasn't able to get summary judgment. Establishing it. That's going to have to be tried. So one of Chicago Title's defenses would be that the La Conientes have that law title. That whole issue is being tried. Let's come back. What did they do that was so inexcusable and so, that's number one, and number two, and so prejudiced you that it should result in a draconian measure of dismissal? First of all, I think you can't look at these facts and not realize it was a calculated litigation strategy. For the last fact, Mr. Mock filed for summary judgment on all the properties in May 2011. If we're going to classify calculated litigation strategies as extreme and inexcusable, we can all just go home, right? Yeah, that's done every day of the week. But four years of litigation, depositions, and you know you're going to make a claim against me. And Mr. O'Connor's claim on the bankruptcies, that wasn't calculated litigation? Chicago Title didn't file bankruptcy. On both sides of this fence, there's a lot of calculated litigation going on. And the mocker already filed two bankruptcies, Judge Roth themselves. So Chicago Title hasn't filed any bankruptcies. All Chicago Title has done is provided defense to which it's insured. That's all that it's done in this case. And that's, in turn... Isn't that really a merits argument, though, Mr. O'Donnell? It may be that you've got a very appealing argument ultimately to a jury or a very strong argument for summary judgment. But is it an argument that under the entire controversy doctrine, you're entitled to a dismissal of the case without any look at the merits or even the allegations? And with no will, claim that you were prejudiced. Well, there is prejudice, because this is... I'll give you a third chance at it. How were you prejudiced? Statute of limitations. I am alleged to be part of a massive conspiracy that went on since 2006. It's now 2014. All of those parties are in the state litigation. If I try to bring those parties in to the federal action, I'm going to have a statute of limitations issue. And I am the only party being held here for vicarious liability. That's prejudicial. I don't know enough about the merits, but one's blink response is bringing in a title insurance company that does a very thing by rote, checking title and writing title insurance. Sounds like you may have a pretty good claim on the merits without bringing anybody else in. But you've known that there's been claims against Chicago title for a long time. How are you surprised? How are you prejudiced by their now seeking to bring you in before Judge Kavanaugh? Because, Your Honor, they're seeking to bring me in under a theory of conspiracy to negligently supervise my agent who's an independent contractor. And you can defend against that. And conspiracy to commit an unnamed tort. And you can defend against that. Is that right? And one of the grounds we've argued, and I realize I'm out of time. We've been out of time for a while. Go ahead. One of the grounds that we've argued is that there are two ways to refer Judge Kavanaugh's decision. One is the entire controversy. The other is the claims themselves are not plausible on a motion to dismiss. What you're being asked to do is to find a cause of inaction for a party who is adverse to my insurer's title. Why would we do that? To leap over and sue the insurer. Why would we do that in the first instance, Mr. Anonimo? Because... Isn't that the job that we give to anal district court judges, to look at those things? The Third Circuit certainly can review the reviews plenary and review the motion to dismiss. You accept the allegations of the complaint as true. And I would submit to you, if you accept the allegations of the complaint as true, this panel as well as the district judge can certainly see that the two causes of action pledged against Chicago title cannot and could not submit a motion to dismiss. We certainly briefed that in front of Judge Kavanaugh on the reconsideration. We briefed it on the May motion. We briefed every single issue. So there's no unfairness to Mr. Malcolm. Final question. I think Mr. Fermento brought up the entire controversy doctrine as a defense. But you didn't bring it up until a final footnote in your reply brief. Is there any support that's soon enough to bring it up without having waived it? Well, I brought it up and joined it in my reply brief before the initial motion. There was no argument that that was not correct, Your Honor. And the entire controversy doctrine, as Judge Kavanaugh ruled, if it applies to Mr. Fermento, it applies to me. If you bring it up timely. Let's cut through it. My own personal view is you brought it up timely. So why don't we hear from Mr. LaSalla. Thank you, Your Honor. Good morning, Your Honors. Joseph LaSalla, Macquarie Jewish Millennium, and carpenter for A.J. Fermento. You know what the questions will be. Why is it that there should be the ultimate penalty here of dismissal when you have to have a finding by the court that there was inexcusable conduct, and I don't truly see that in the court's opinion, and that there was substantial prejudice to your client? I'll take them one at a time. In terms of inexcusable delay, that's one of the components that the court has to look at in determining whether or not the entire controversy doctrine has to apply in a party-joinder analysis. In dealing with this issue in our brief, one of the cases that we relied upon and relied upon rather heavily is the Fisher case. And admittedly, Fisher was a case that was decided before the amendment in 1998, but it still spoke to delay and what the impact of delay would have on an application under the entire controversy doctrine and what could be deemed inexcusable delay. In Fisher, we call them Fisher 1 and Fisher 2. In Fisher 1, literally at the last moment, there's an issue that arises that the real party in interest in this particular real estate foreclosure, the real title holder, was not named in the lawsuit. The plaintiff ends up losing the case in Fisher 1, takes an appeal, and while the appeal is pending, files Fisher 2. It files Fisher 2 adding to the new party, the party that was omitted from Fisher 1, and that is the real title holder. What the court focused on was the fact that the plaintiff, for 18 months, neglected to take a very simple step, and that is the step of having a title search done, which would have revealed who the real title holder was. The court found that, as you noted quite rightly, Fisher is a pre-'98 case, and so the consequence in Fisher was preordained, because the rule as it stood at that time was dismissal was the sanction. Post-amendment, the law, as I understand it, is very different. Maybe you can straighten me out. Now, in party-joined RECD, dismissal is supposed to be the sanction of last resort, and courts are supposed to exercise their discretion to see whether some lesser sanction is appropriate. So, even assuming what you said about Fisher is all accurate, and those are things that the courts ought to be looking at, doesn't that mean that this case ought to go back, because the district court here did not look at them and think about alternative sanctions? Well, the district court certainly didn't address alternative sanctions. I think you're on... I mean, prior to 98, you had a rule, especially with regard to party preclusion, that was substantially criticized, including by Professor Hazard, in an article in the Rutgers Law Journal. And so the court... I mean, people took it to heart. They go back, and they write a new rule. So, it's a whole new ballgame with respect to parties, post-98. It is your honor agreed, but the concept of inexcusable delay was addressed by the court in Fisher, but I'll move past that. Under these facts, I think, and especially in terms of Mr. Fermento, an attorney, there was inexcusable delay. He was no stranger to the parties. He was involved as a counsel to the party, at least according to the complaint that we have to deal with, as far back as 1998. The allegations against him when he joined his wild... allegedly joined his wild deed scam conspiracy with all kinds of other people occurred in 2005, or at the latest, 2006. The litigation at that point is already eight years old. The litigation at that point involves real estate, and involves real estate up until today. The fact that these deeds were prepared pursuant to this alleged conspiracy, and filed, and filed the proper way in the counties where they're supposed to be filed, with this legend about pursuant to a court order, should put somebody on notice that some lawyer was involved, that perhaps it was Fermento who had been involved for the last eight years. Instead, the litigation marches on. It marches on for another four years, at least, until these documents are produced, and then it marches on yet another year until the application is made in June of 2011 to join Fermento. Was Fermento first added... Was he added in the January 9, 2009 amendment to the state action? No, he was not. He was not just Chicago title? Yeah. Okay. That, under these facts and circumstances, isn't a year delay. It isn't an 18-month delay. It's a five- or six-year delay of someone who should have been on somebody's radar screen. The plaintiff has the burden to come forward and say there's some reason. The problem that we have is, in a very short opinion of seven to eight pages, which the first four pages are essentially facts, we don't have a whole lot of analysis of what you just told us. Understood, Your Honor. Judge Cavanaugh did point out, though, that the plaintiff's attempted to name both of our defendants, and he's referring to Judge Wittgenstein, and thus it was too late to allow Fermento and CTIC to be added, as doing so would prejudice the proposed defendants. And it points out that there was no appeal taken from that. Judge Cavanaugh did look at the fact that there was a delay, referring back to Judge Wittgenstein, and that it was prejudicial to both defendants, Chicago title and to Mr. Fermento. As to the slander of title claim, when do you say that they should have known about that? The slander of title claim they should have known back when the deeds were filed in 2005 or 2006. Because the assertion is made, as I understand it, that your client was making representations which were contrary to what the Connecticut Bankruptcy Court actually included in its order about the sale of the underlying properties. Were there representations that were being made by Mr. Fermento after the deeds were filed? Were there other things happening that would bear on the slander of title assertions? Not that I'm aware of from the information we have available to us now, Your Honor. In discovery, something else may come up, but not that I'm aware of now. I don't know if Your Honor wanted me to address the second question that Your Honor had posed to us. And I think if it is, it was substantial prejudice. And again, we have some of the same matters that Chicago title has, and we have some others. First, of course, is statute of limitations. Perhaps res judicata, perhaps collateral estoppel. The allegations that he's being charged with now— Wait a minute. You say statute of limitations. You mean statute of limitations of them v. you, which would be helpful to you, or statute of limitations where you could bring in third parties? I meant the latter, Your Honor. For example, we are charged with the same conspiracy that Chicago title is. We are charged with aiding and abetting and being involved with other co-conspirators. Do you know today to what extent there would be possible third-party claims? On our part, I couldn't specifically say, Your Honor, we have determined that there is an actual third-party complaint, but in a conspiracy case there are co-conspirators. If we are alone with Chicago title in the case in the district court, we have an obligation and will actively pursue any person we can. The problem is if we're going back to 2005 or 2006, we have a very clear, sharp statute of limitations issue under any potential statute of limitations. Are there no further questions? No, sir. Thank you very much. First of all, Judge, the rule does not speak in terms of inexcusable delay. It speaks in terms of an inexcusable failure to make the disclosure. It doesn't speak in terms of... No, you delayed and they're saying that was inexcusable failure, so it's pretty much one and the same, isn't it? No, Your Honor, because we did make the disclosure in our motion for leave to amend. That's... Is that the most prominent point you want to make on rebuttal? No, there's more. I just wanted to make sure we weren't... It's too easy to substitute a more convenient word for what the rule actually discusses, which is failure to disclose, not delayed disclosure. It seems like sixes, Mr. Scarpone, so you really should hit what you think is the strongest point you got. Obviously, there are a lot of factual disputes, a lot. Mr. Fermento doesn't appear in the real estate documents. There was an agreement between the parties to keep the major closing where they put $37 million worth of liens on my client's property to keep it a secret. Can you respond to the statute of limitations point? The statute of limitations argument is a creature of their creation. Well, they would say, I think, no, it's not a creature of our creation. It's a creature of your playing hokey pokey with your claims. You know, Chicago title's in, Chicago title's out, Chicago title's in, Chicago title's out. And when, at the end of the day, you want to say Chicago title's in, they can't bring third parties in that they want to, and that's not a dance they're willing to do with you and not one that the court should allow to be done. So since their prejudice argument is it's a result of your litigation choices, we won't get to bring third parties in, what's wrong with that as an argument for substantial prejudice? The first two amendments to the complaint that we filed, the original complaint was filed in April of 99 before any of these transactions occurred. These transactions occurred in 2006 in the course of a bankruptcy case in Connecticut. But the first two times we named Chicago title, we named them in one count, which was a quiet title count. And because we knew they had issued title insurance to the mortgagees who held the mortgages we were seeking to void, we included them on the title insurance count. I'm not sure I'm getting how this speaks to the question of prejudice. The question that I'm trying to get you to respond to is, they say if you let them put us on the hook now, we potentially could look to third parties, but we won't be able to because statute of limitations will run. We're prejudiced. What's the flaw in that argument? I didn't create that problem. I moved for leave to amend. Had the amendment been allowed, they would have been in the existing state court case with the same claims and all the co-defendants, they could have asserted cross claims against all the other defendants. Whatever claims they had, they chose to avoid that case. They didn't want to be in that case. Did they actively litigate against being added? Did they fight the motion to amend in that case? They appeared in that case somehow? I don't believe Mr. LaSalle did, but Mr. O'Donnell was aware of this case all the way through because he had told me they didn't want to be in the quiet title action because they were already insuring the lenders who held the liens that we were trying to void. They were paying for one counsel already in the case, and they didn't want to be in a second time. It was their choice in the case of Chicago title. In the case of Fermento, he had been in the case as counsel way back, going back to 1998. Well, that sort of goes to, I guess, Mr. LaSalle's point, which is you knew about Mr. Fermento, and you knew when deeds were filed, or you should have known, that if there was a problem with the slander of title, why didn't you take steps? Why didn't you do something then? Now you've waited, and we've got a statute of limitations problem too. The answer to that is simple, Judge. His name did not appear on those deeds. There was no record that indicated he had executed any part of that. We found out about his involvement when we got the e-mail. His involvement was through the e-mail. Which came to light for you in 2010, you're saying? Part of a series of productions in 2010, the three that Mr. O'Donnell described plus others that were coming from other defendants. Is there anything you want to sum up with? Just this, Judge. If the case had been left the way we had structured it, the amendment would have been granted, they would have been joined in that trial, in that case, which two and a half years later still has not gone to trial. And remember, here we're not talking about one trial, we're talking about three. The claims in this case would have been the subject matter of the third of the three trials. The first trial is an ownership dispute. Mr. Fermento does not claim to be an owner. Nor does Chicago Title. To the extent Chicago Title has an interest in the ownership dispute, they're litigating it right now through another firm that is counsel. Today we're here dealing with the entire controversy doctrine, which actually leads to the point where we started off at the beginning. To the extent that there is a claim that there was late removal and it's not waived, I think that needs to be brought up in the action if it were to go back. Not before us. I will. Do you have a different view? I would like to see a 28-J submission. If you've got an argument that there is a lack of jurisdiction and you haven't waived it, you should tell us because that would be important to know, I think. I will submit it, Judge, if the court grants me leave to do so. If all sides then would submit within the next week, that is by a week from today, by 4 p.m. to the Court of Philadelphia, a letter of memoranda as to whether the removal was late and whether it has now been waived, and keep that to 10 double-spaced pages in total. A week from today, was there a removal from the state court to the federal court that was late and by not bringing it up until now, has it been waived? Thank you, Bruce. Thank you, everybody. We'll take the matter under advisement.